OPINION OF THE COURT
Joan S. Kohout, J.
On February 23, 2012, the Monroe County Department of Human Services (DHS) filed a petition alleging that the respondent Bianca S. violated the terms of an order placing her with DHS as a person in need of supervision (PINS). The petition also requested an extension of placement and a permanency hearing. Attached to the petition is a copy of the court order that placed the respondent with DHS, as well as an affidavit from Jordan Pier, a residential counselor at St. Joseph’s Villa, alleging that the respondent left St. Joseph’s Villa on February 17, 2012 without permission and never returned.
This decision amplifies the bench decision issued by the court on March 28, 2012 at the conclusion of the fact-finding hearing.
*480 Background
After the petition was filed on February 23, 2012, a warrant was issued for the respondent. The respondent was produced on the warrant on March 1, 2012, at which time she was in the Monroe County Jail on an adult criminal charge. The case was adjourned until the next day for appearance of the respondent’s attorney.
On March 2, 2012, substitute counsel appeared with the respondent. At that time, the court was advised that the respondent was scheduled for sentencing on a criminal charge on March 7, 2012. It was also determined that the respondent’s mother was incarcerated in the New York State Department of Corrections and Community Supervision. The case was adjourned for appearance of the respondent’s assigned attorney, production of her mother from prison and information about the status of the criminal case.
On March 8, 2012, the respondent’s mother was produced from Albion Correctional Facility and counsel appeared with the respondent. Counsel advised the court that the respondent had received a sentence of four months in the Monroe County Jail plus five years’ probation. The respondent was required to complete her placement with DHS as a condition of probation. Counsel also reported that the respondent expected to be released from the jail in about six weeks. The case was adjourned for DHS to look into other residential programs for the respondent, since St. Joseph’s Villa refused to accept the respondent back.
On March 21, 2012, the respondent, counsel and DHS appeared, but the respondent’s mother was not produced from prison. The case was adjourned for a hearing on the violation petition and for appearance of the respondent’s mother.
On March 28, 2012, a hearing was held on the violation petition. DHS elected not to go forward with the alternative request for an extension of placement. At the hearing, the petitioner presented the testimony of DHS caseworker Halyma Chavez and Jordan Pier, a residential counselor at St. Joseph’s Villa, both of whom testified credibly. No proof was presented by the respondent. The court took judicial notice of the relevant court orders.
For the reasons stated below, the court sustained the violation petition, placed the respondent with DHS for a new term of 12 months and held a permanency hearing setting the goal as place *481 ment in a planned living arrangement with a significant connection to an adult, her mother.
Violation Petition
On August 24, 2010, Bianca S., who was born July 31, 1994, was adjudicated a PINS and placed with DHS specifically for placement at Hillside Children’s Center for 12 months. The court order outlines a variety of problems supporting the respondent’s need for placement, including a “history of awols, missed school and inability to comply with rules of the home/ conflicts with father.” At that time, the court determined that the respondent required “[placement in a highly structured setting that will ensure treatment in relation to trauma, mental health and impulse/anger control.”
On August 9, 2011, the respondent agreed to a nine-month extension of placement with DHS terminating on August 8, 2012.[1] The extension of placement order outlined the respondent’s needs and the services provided to assist her: “Respondent Bianca S. has been offered a structured and supervised living setting along with counseling and other services to address behavioral, emotional and mental health issues, including substance abuse treatment, counseling, support for educational goals . . . .” The order also states that the respondent’s mother was returned to prison and was unavailable to care for the respondent.
DHS caseworker Halyma Chavez testified that the respondent is currently placed with DHS. Ms. Chavez is responsible for monitoring the respondent’s placement, which most recently has been at St. Joseph’s Villa. The respondent’s case was transferred to Ms. Chavez in February 2012 after the respondent was transferred from a group home to the St. Joseph’s Villa residential facility because of behavior issues. Ms. Chavez spoke to the St. Joseph’s Villa worker, Becky Ash and met with the respondent twice, including a visit at the jail. Ms. Chavez also signed the petition as a representative of DHS.
St. Joseph’s Villa residential counselor, Jordan Pier, also testified. Ms. Pier is a residential counselor at St. Bernard’s Cottage at St. Joseph’s Villa where the respondent was placed. Although Ms. Pier did not know the exact date that the respondent came *482 to the cottage, she recalled that the respondent was there during the holidays. Ms. Pier teaches independent living skills and coping methods to the residents. She also directly supervises the girls in the cottage.
On February 17, 2012, the respondent was stressed after having a bad phone call and told Ms. Pier that she needed to “breathe.” The respondent left the cottage ignoring Ms. Pier’s request for her to return. The respondent did not have permission to leave and never returned to St. Joseph’s Villa.
The respondent did not testify and did not present any witnesses or proof.
At the conclusion of the hearing, the respondent’s counsel requested a dismissal of the petition alleging that there was insufficient proof that the respondent was the same Bianca S. who was the subject of the testimony.
The violation of placement petition is sustained and the respondent’s motion to dismiss is denied. The petitioner satisfactorily proved by competent proof that the respondent left the institution where she was placed without just cause (see Family Ct Act § 778).
The court also finds satisfactory proof that the respondent is the individual alleged in the petition to have violated the PINS placement order. The court takes notice of the multiple court orders issued during these proceedings to produce the respondent from the Monroe County Jail, all of which directed the production of Bianca S., date of birth: July 31, 1994, which is the name and date of birth contained in the petition. As a result of the orders to produce, the respondent appeared in Family Court for the violation hearing and at three prior court dates on this petition. At no time did the respondent or her attorney deny the paragraph in the petition which listed the respondent’s name and date of birth. Nor did the respondent deny that she is the same person named in the court orders of placement alleged in paragraphs five and six of the petition. Moreover, the hearing testimony provided additional circumstantial proof that the individual before the court was the same individual referenced in the orders and petition.
Dispositional Order
I.
After a finding that a PINS respondent violated an order of placement, the court may immediately revoke the order of place *483 ment and make “any order that might have been made at the time the order of placement was made, or any order authorized under section seven hundred fifty-six” (Family Ct Act § 778). Family Court Act § 756 authorizes the court to place a respondent for up to 12 months.
DHS argues that the respondent continues to need residential therapeutic care and requests that the respondent be placed for a period of 12 months. Although Family Court Act § 778 does not require an additional dispositional hearing before a new order is made, the court, as a matter of discretion, offered the parties an opportunity to present testimony and other relevant information regarding their proposed plans for the respondent.
Although the respondent did not take advantage of the court’s offer for a testimonial hearing on the issue of disposition, she challenged the authority of the court to make a new 12-month order of placement on the ground that the court lacked jurisdiction since she would turn 18 years old during the term of the order. The respondent, however, did not challenge the current placement order, which continues respondent’s placement with DHS until August 8, 2012, which is approximately one week past her birthday. The court finds the respondent’s argument unpersuasive.
The respondent argues that the age limitation contained in the PINS extension of placement statute Family Court Act § 756-a (f) governs this case because the petition contained an alternative request for an extension of placement.[2] While the respondent is correct that section 756-a (f) prohibits the extension of PINS placements beyond a respondent’s 18th birthday without the respondent’s consent, that provision does not apply in this case. Prior to the hearing, DHS withdrew its request for an extension of placement and proceeded only on the violation petition, which is governed by Family Court Act § 778 and contains no age limitation.
The requirements of Family Court Act § 778 differ from section 756-a in several important procedural respects, which are designed to provide a respondent alleged to have violated a PINS placement with due process safeguards. While an extension of placement may be granted in the discretion of the court, a violation petition under section 778 requires competent proof *484 and a specific showing that the respondent left the facility where she was placed without permission and without just cause. After a finding of violation of placement, the court may immediately revoke the old placement order and issue any order that could have been made at the time of the original placement or direct a new 12-month placement order under Family Court Act § 756. Unlike section 756-a, no age-limiting language is contained in section 778.
In contrast, Family Court Act § 756-a does not contain any procedural prerequisites or specific elements that must be proved before an extension of a PINS placement is granted. In the absence of any statutory procedures, courts have applied an abuse of discretion analysis, which includes consideration of the behavior and need of the respondent for additional supervision and treatment (see Matter of Chasity B., 28 AD3d 1191 [4th Dept 2006]; Matter of Kacey H., 223 AD2d 876 [3d Dept 1996]). Since an extension of placement proceeding is dispositional in nature, competent proof is not required and the evidence presented need only be material and relevant (see Family Ct Act § 745 [a]). Thus, at an extension of placement hearing, the proof will generally include testimony regarding the respondent’s failure to complete treatment and follow facility rules. In this context, which focuses on the respondent’s best interests and provides few due process safeguards, it is reasonable that the Legislature would limit the time frame of an involuntary extension of placement to the respondent’s 18th birthday.
It is well established that as long as a PINS proceeding is initiated before a youth turns 18 years old, the court’s jurisdiction continues past the respondent’s 18th birthday (see Matter of Brittny MM., 51 AD3d 1303 [3d Dept 2008]; Matter of Matthew L., 65 AD3d 315 [2d Dept 2009]). As a result, there is no maximum age after which the court is precluded from making a placement under Family Court Act § 756 (see Matter of Matthew L., 65 AD3d at 318).
Since the court has jurisdiction over respondents of any age who are currently placed as PINS with authorized agencies, it seems unlikely that the Legislature would leave the Family Court without the authority to enforce its placement orders in cases involving older youth (see Matter of Brittny MM., 51 AD3d at 1304). To do so would not only negate the court’s responsibility to assure compliance with its orders, but also would undermine the court’s essential responsibility to provide for the child’s needs and best interests, as well as the community’s se *485 curity (see Matter of Ashlie B., 37 AD3d 997 [3d Dept 2007]; see also Family Ct Act § 711 [a]).
II.
Having determined that the court has jurisdiction to make a new placement order that would extend past the respondent’s 18th birthday, the court concurs with DHS that the respondent is in need of an additional 12-month placement with DHS due to her behavior and needs. Additionally, there is the special circumstance that the respondent’s mother is incarcerated in the Department of Corrections and Community Supervision.
The parties agree that the respondent is scheduled for release from jail in a few weeks on her criminal charge. At that time, she will need a safe place to live. Moreover, the respondent’s behavior warrants continued residential care. As previously determined, the respondent absconded from her placement at St. Joseph’s Villa, did not complete her treatment program and became involved with the criminal justice system during her period of placement. Without intensive therapeutic intervention and supervision, the respondent’s prognosis is poor.
The prior orders of the court chronicle the respondent’s history of noncompliance in school, at home and her adjudication as a PINS. The most recent order identifies her need for mental health and substance abuse treatment, education and a structured residential setting. There was no proof presented that these issues have been resolved.
Thus, it would be contrary to the respondent’s best interest to be discharged from placement due to her need for treatment, supervision and a safe place to live when she is released from jail. No efforts by DHS to avoid this placement were required since the respondent was already in placement with the agency.
Therefore, the prior order is revoked and the respondent is placed with the Monroe County Department of Human Services for a period of 12 months. The Monroe County Department of Human Services is directed to locate a therapeutic residential placement that will meet the needs of the respondent identified in this order. If the respondent progresses well and is ready for discharge from placement before 12 months, any party may petition the court to terminate placement pursuant to Family Court Act § 764.
The court shall sign a separate order of fact-finding and disposition, to be submitted by the petitioner.

. The court records show that the respondent’s original placement was temporarily extended on July 12, 2011 until August 9, 2011 as permitted by Family Court Act § 756-a (e). The temporary order was never reduced to writing.

. During the pendency of the case, DHS offered to allow the respondent to consent to a 12-month extension of placement in satisfaction of the petition. When this offer was rejected and the case was scheduled for hearing, DHS elected to go forward solely on the violation petition.